UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRANSIT SOURCING SERVICES, INC.,

Plaintiff,

v.

BONATRANS NORTH AMERICA, INC., and
JIŘÍ KALETA,

Defendants.

Case No. 1:26-cv-7746

**MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

Curtis A. Johnson
BOND, SCHOENECK & KING, PLLC
350 Linden Oaks, Third Floor
Rochester, New York 14625
Tel: (585) 362-4700
cjohnson@bsk.com

*Attorneys for Bonatrans North America, Inc. and Jiří Kaleta*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ iii

PRELIMINARY STATEMENT ........ 1

RELEVANT FACTS ........ 2

LEGAL STANDARD ........ 5

ARGUMENT ........ 7

I. TSS is Unlikely to Succeed on the Merits ........ 7

A. There is No Proof BNA Tortiously Interfered with Any Contracts ........ 7

B. BNA Did Not Tortiously Interfere with Business Relations ........ 10

C. BNA Did Not Engage in Unfair Competition ........ 12

D. TSS Cannot Establish the Existence of Trade Secrets, Let Alone their Misappropriation ........ 16

1. The Alleged Trade Secrets are Not Secrets ........ 17

2. TSS Failed to Protect its "Secret" Information ........ 19

3. BNA Had No Duty to Maintain the Disclosed Information as Confidential ........ 20

4. TSS has Not Presented Evidence of Use of Trade Secrets ........ 21

II. There is No Risk of Irreparable Harm ........ 22

A. TSS's Delay Undercuts the Need for Preliminary Injunctive Relief ........ 22

B. There is No Risk of Loss of Business Relationships ........ 24

C. TSS Can Recover Monetarily ........ 25

III. Hardships Do Not Balance in Favor of TSS ........ 25

IV. The Relief Sought is Vague and Ill-Defined ........ 26

CONCLUSION ........................................................................................................ 28

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*106 N. Broadway, LLC v. Lawrence*,
189 A.D.3d 733 (2d Dep't 2020) .......... 8, 10

*Allison Lending, LLC v. Landa APP 3 LLC*,
25-cv-01939(EK)(MMJ),
2025 U.S. Dist. LEXIS 224917 (E.D.N.Y. Nov. 16, 2025) .......... 27

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 8

*Ashland Mgmt. Inc. v. Janien*,
82 N.Y.2d 395 (1993) .......... 18

*Barbato v. Interstate Fire & Cas. Ins. Co.*,
25-cv-5312 (JGK),
2025 U.S. Dist. LEXIS 259094 (S.D.N.Y. Dec. 15, 2025) .......... 10, 11

*Beckman v. Artspace Projects, Inc.*,
26-CV-921-LJV,
2026 U.S. Dist. LEXIS 167693 (W.D.N.Y. July 28, 2026) .......... 27

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 8

*Cacchillo v. Insmed, Inc.*,
638 F.3d 401 (2d Cir. 2011) .......... 6

*Central Point Software, Inc. v. Glob. Software & Accessories, Inc.*,
859 F. Supp. 640 (E.D.N.Y. 1994) .......... 23

*Charette v. Town of Oyster Bay*,
159 F.3d 749 (2d Cir. 1998) .......... 6

*Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*,
598 F.3d 30 (2d Cir. 2010) .......... 5

*City of New York v. Mickalis Pawn Shop, LLC*,
645 F.3d 114 (2d Cir. 2011) .......... 26

*Commodity Futures Trading Comm'n v. Incomco, Inc.*,
649 F.2d 128 (2d Cir. 1981) .......... 6

*Council for Responsible Nutrition v. James*,
No. 24-cv-1881 (ALC),
2024 U.S. Dist. LEXIS 72982 (S.D.N.Y. Apr. 19, 2024) .......................................... 23

*CSI Ent., LLC v. Mayweather*,
No. 26-CV-5150 (VSB),
2026 U.S. Dist. LEXIS 147670 (S.D.N.Y. July 2, 2026) .......................................... 22

*Davis v. Odn I GmbH*, No.
25-860,
2025 U.S. App. LEXIS 30497 (2d Cir. Nov. 21, 2025)............................................. 7

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
559 F.3d 110 (2d Cir. 2009) .......................................................................... 22

*First-Citizens Bank & Tr. Co. v. Patriot Bank, N.A.*,
834 F. Supp. 3d 462 (S.D.N.Y. June 9, 2026)............................................ 8, 9, 24

*Harrington v. Ortolani*,
247 A.D.3d 733 (2d Dep't Mar. 4, 2026) .......................................................... 10

*Inv. Sci., LLC v. Oath Holdings Inc.*,
20 Civ. 8159 (GBD),
2021 U.S. Dist. LEXIS 151076 (S.D.N.Y. Aug. 11, 2021)...................................... 19

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*,
596 F.2d 70 (2d Cir. 1979)............................................................................. 6

*KAM Constr. Corp. v. Bergey*,
151 A.D.3d 1706 (4th Dep't 2017) .................................................................. 10

*Kern v. Clark*,
331 F.3d 9 (2d Cir. 2003)............................................................................... 6

*Lama Holding Co. v. Smith Barney, Inc.*,
88 N.Y.2d 413 (1996)..................................................................................... 8

*Mazurek v. Armstrong*,
520 U.S. 968 (1997) ....................................................................................... 5

*MLGenius Holdings LLC v. Google LLC*,
20-3113,
2022 U.S. App. LEXIS 6206 (2d Cir. Mar. 10, 2022)........................................... 13

*Moore v. Consol. Edison Co. of N.Y., Inc.*,
409 F.3d 506 (2d Cir. 2005)............................................................................ 5

*Muddy Bites, Inc. v. Evergreen USA, LLC*,
24-cv-07089 (LAK),
2025 U.S. Dist. LEXIS 182866 (S.D.N.Y. Sept. 17, 2025) .................................... 9

*NBT Bancorp v. Fleet/Norstar Fin. Grp.*,
87 N.Y.2d 614 (1996)............................................................................. 8, 10

*Pauwels v. Deloitte LLP*,
83 F.4th 171 (2d Cir. 2023) ....................................................................... 19

*Pride Techs., LLC v. Khublall*,
21-2225,
2022 U.S. App. LEXIS 34204 (2d Cir. Dec. 13, 2022) ....................................... 10

*Rosenberg v. Avery*,
25-cv-222 (ALC),
2025 U.S. Dist. LEXIS 200543 (S.D.N.Y. Oct. 9, 2025)..................................... 23

*Sadkhin Franchising Co. LLC v. Zamora*,
25-cv-1657 (NRM) (CHK),
2026 U.S. Dist. LEXIS 94461 (E.D.N.Y. Apr. 29, 2026) ..................................... 16

*Samsung Elecs. Am., Inc. v. Vintage Tech LLC*,
20-cv-10771 (AJN),
2021 U.S. Dist. LEXIS 49801 (S.D.N.Y. Mar. 11, 2021)..................................... 27

*Schmidt v. Lessard*,
414 U.S. 473, 476 (1974) .......................................................................... 27

*Smith v. Fedrico*,
No. 12-cv-4408,
2013 U.S. Dist. LEXIS 3681 (E.D.N.Y. Jan. 8, 2013).......................................... 24

*Smith v. City of N.Y.,*
754 F. Supp. 3d 581 (S.D.N.Y. 2024).............................................................. 22

*Stern v. Highland Lake Homeowners*,
No. 18-CV-4622,
2021 U.S. Dist. LEXIS 58190 (S.D.N.Y. Mar. 26, 2021)....................................... 6

*SymQuest Grp., Inc. v. Canon U.S.A., Inc.*,
15-cv-4200(LDW)(SIL),
2015 U.S. Dist. LEXIS 114898 (S.D.N.Y. Aug. 7, 2015)................................ 13, 24

*Thayil v. Fox Corp.*,
Case No. 11 Civ. 4791 (SAS),
2012 U.S. Dist. LEXIS 13669 (S.D.N.Y. Feb. 2, 2012) ........................................ 20

*Tri-Star Light Corp. v. Goldstein*,
151 A.D.3d 1102 (2d Dep't 2017) ........................................................................... 16

*Universal Processing LLC v. Zhuang*, No.
17 CV 10210-LTS,
2018 U.S. Dist. LEXIS 168730 (S.D.N.Y. Sept. 28, 2018) .................................. 17

*Vinci Brands LLC v. Coach Servs., Inc.*,
23 Civ. 5138 (LGS),
2023 U.S. Dist. LEXIS 162390 (S.D.N.Y. Sept. 12, 2023) .................................... 9

*Zylon Corp. v. Medtronic, Inc.*,
Index No. 650523/08,
2015 N.Y. Misc. LEXIS 1276 (Sup. Ct. N.Y. Cnty. Apr. 17, 2015)......................... 20

**Statutes and Other Authority**

Fed. R. Civ. P. 65.................................................................................................... 26

Bonatrans North America, Inc. ("BNA") and Jiří Kaleta by and through their counsel, Bond, Schoeneck & King, PLLC, state as follows in opposition to Transit Sourcing Services, Inc.'s ("TSS") motion for a preliminary injunction:[1]

## PRELIMINARY STATEMENT

TSS seeks limited and ultimately ineffective relief from this Court in the form of an injunction against BNA as a proxy for Bonatrans Group a.s., ("Bonatrans") who it avoided suing in an effort to dodge an arbitration agreement. TSS is unhappy that after providing decades of sales support for Bonatrans, the manufacturer ended the parties' relationship upon determining that TSS had been helping itself to profits in excess of the 7% margins specified by contract. TSS does not seek restoration of its role as Bonatrans' exclusive distributor—it cannot without suing Bonatrans directly. Instead it seeks to preclude Bonatrans' subsidiary, BNA, from making sales on Bonatrans' behalf for the final two months of 2026. Whatever urgency TSS may have claimed in the spring or summer of 2026 has largely dissipated by the fall, and TSS stands to gain very little from a preliminary injunction. Even the tradeshow that TSS sought to prevent BNA from attending will have come and gone by the time the Court considers this motion.

Success on the merits is unlikely in large part because the pleadings fail to state causes of action and TSS failed to present the Court with sufficient evidence to support claims of tortious interference, unfair competition and trade secret misappropriation. In truth, TSS provided BNA and Bonatrans with what it now claims are trade secrets without first obtaining any confidentiality or non-disclosure protections, took BNA on roadshows to introduce it to customers even after BNA made clear it would not be acquiring TSS,

---

[1] Defendants' opposition to the instant motion for preliminary injunction is not a waiver of their right to compel arbitration or change venue, which rights are not waived.

and shared market data and customer specific data with Bonatrans as required under the parties' distribution agreement. None of the supposed "trade secrets" were even alleged to have been used in connection with BNA's customer solicitations. The crux of TSS's complaint is that BNA has been sharing news of Bonatrans decision to terminate its exclusive distribution agreement with TSS in July, which TSS claims has "confused" its customers. TSS is further dismayed by the fact that upon termination of that agreement, Bonatrans has refused to honor new purchase orders from TSS, opting instead to abide by the letter of the parties' agreement which only requires completion of those purchase orders Bonatrans received and accepted before termination, subject to the applicable payment conditions. These are not things TSS can rectify by suing BNA or obtaining injunctive relief.

TSS does not face irreparable harm at the hands of BNA. Its distribution relationship with Bonatrans is over. TSS is free to find a new manufacturer in need of marketing and sales support. The plaintiff itself argues that it can replace Bonatrans wheels and axles with those from one of its competitors to perform under its extant customer contracts. If TSS cannot find another manufacturer to support, its supposed goodwill is worthless, but not because of any action taken by BNA. In the unlikely event BNA wins business from a customer TSS is able to prove was obtained unlawfully, it is relatively easy for TSS to calculate its lost profits from the contract and obtain monetary relief. No part of TSS's motion justifies the extraordinary relief it seeks.

## RELEVANT FACTS

TSS is no longer Bonatrans exclusive distributor in North America, and rather than challenging termination of its contract with Bonatrans via arbitration in Vienna, Austria,

TSS asks this Court to assume, without any proof, that the termination was pretextual and ineffective. Much of what TSS complains about in its pleadings and briefs is that Bonatrans has failed to continue to perform under the GPA post-termination, but Bonatrans is not a party to the instant litigation. (*See e.g.* Dkt. No. 1-2, State Ct. Dkt. 15, Memorandum of Law in Support of Plaintiff's Order to Show Cause for Entry of a Preliminary Injunction Pursuant to CPLR § 6301 ("TSS MOL") at 5) ("Defendants have refused to provide quotations necessary for TSS to pursue customer opportunities in its exclusive territory . . . ."). TSS and Bonatrans were parties to a General Purchase Agreement dated August 29, 2022 (the "GPA") which named TSS as Bonatrans' exclusive distributor in North America. (Dkt. No. 1-1 at State Court Dkt. No. 1 ("Verified Complaint") at ¶ 4.) Bonatrans terminated that agreement effective July 7, 2026. (Dkt. No. 13-9.) Bonatrans did so because TSS breached a key term of the GPA which restricted TSS from charging its customers more than 7% over the wholesale price it paid Bonatrans for the train wheels and other goods covered by the GPA. (Dkt. No. 13-8.) TSS does not deny that it breached the GPA and presents the Court with no fact disproving its breach, only an explanation for why the breach occurred. (Dkt. No. 1-2 at State Ct. Dkt. No. 16, Affirmation of Cassie Brown in Support of Order to Show Cause for a Preliminary Injunction dated August 19, 2026 ("Brown Aff.") at ¶¶ 23-24.) TSS's allegation that Bonatrans approved its pricing does not resolve the parties' dispute concerning compliance with the GPA's margin limitation. In contemporaneous communications, TSS represented to Bonatrans that its margin on an earlier bid was approximately 6% and subsequently represented that its anticipated net margin on the MTA bid, after costs, would be approximately 3-4%. (Declaration of Jakub Weimann in Opposition to Motion

for Preliminary Injunction dated October 2, 2026 ("Weimann Dec.") at ¶ 2 and Exs. A and B.) Bonatrans' involvement in reviewing tender parameters therefore does not establish that it approved whatever actual margin TSS ultimately charged. In any event, the parties' disagreement concerning the proper calculation and application of the GPA's margin provisions is a contractual dispute between TSS and Bonatrans subject to arbitration.

There is no dispute that before terminating the GPA, Bonatrans exercised its option not to renew the agreement beyond December 31, 2026. (Dkt. No. 13-7.) TSS's ability to sell Bonatrans products, and perhaps to continue to exist as a going concern, was impaired by that decision. TSS called it the other shoe dropping, but the plaintiff does not contest Bonatrans' right not to renew. (Dkt. No. 13 ("Amended Complaint") at ¶ 80.) TSS has been selling Bonatrans products for decades and has presented the Court with no evidence that it has an agreement with one of Bonatrans competitors to sell other train wheels. (*Id*. at ¶ 4.) If TSS is somehow correct in its assertion that Bonatrans' termination of the GPA in July was itself a breach of that agreement, and the GPA remains in effect through December 2026, TSS is precluded from engaging in any business with Bonatrans' competitors until January 2027. (Dkt. No. 13-2.) BNA and Bonatrans contend that the GPA is terminated, allowing TSS to establish those relationships now.

TSS has for the duration of its relationship with Bonatrans shared what it now claims are trade secrets with Bonatrans without any protection of that information. (Weimann Dec. at ¶ 10.) The GPAs require certain disclosures to Bonatrans, including copies of purchase orders, market trends, competition, potential clients and tenders being prepared and a marketing analysis. (Dkt. No. 13-2 at §§ 5.3, 7.4.2 and 7.4.3.) The GPA

does not contain confidentiality provisions or non-disclosure language. (*See generally id*.)

More recently TSS shared information about its customers with BNA without insisting on any protections. (Amended Complaint at ¶¶ 50-55.) TSS claims it did so in furtherance of a potential merger, but it acknowledges that it knew as of February 17, 2026 that there would be no merger (Amended Complaint at ¶ 71) and then began participating in "roadshows" with BNA and its customers the week of February 23, 2026. (Amended Complaint at ¶ 62.) None of the information now claimed as trade secrets are in fact secrets.

BNA has been careful in its communications with prospective customers to preserve TSS's rights under the GPAs by reminding customers that TSS is responsible for any pending purchase orders placed on those customers' behalf with Bonatrans. (Dkt. No. 13-9.) BNA is simply positioning itself to win future purchase orders not yet secured by TSS.

## LEGAL STANDARD

Preliminary injunctions are "an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 512 (2d Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)) (emphasis in *Mazurek*).

"[A] party seeking preliminary injunction to show '(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'" *Citigroup Glob. Markets,*

*Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979)).

Where preliminary injunction motions seek affirmative or mandatory relief, as is the case with TSS's request that BNA return trade secrets, the movant must make "a clear showing that the moving party is entitled to the relief requested, or [that] extreme or very serious damage will result from a denial of preliminary relief." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011) (further citation omitted).

Mere allegations in a complaint are insufficient to support a motion for preliminary injunction. *Stern v. Highland Lake Homeowners*, No. 18-CV-4622, 2021 U.S. Dist. LEXIS 58190 (S.D.N.Y. Mar. 26, 2021) ("the movant bears the burden of persuasion to establish the situation meets the standard for a preliminary injunction, and must offer proof beyond the unverified allegations of the pleadings").

"It is settled law in this Circuit that motions for preliminary injunctions should not be decided on the basis of affidavits when disputed issues of fact exist." *Kern v. Clark*, 331 F.3d 9, 12 (2d Cir. 2003) (quoting *Commodity Futures Trading Comm'n v. Incomco, Inc.*, 649 F.2d 128, 131 (2d Cir. 1981)). However, "an evidentiary hearing is not required when, inter alia, disputed facts are amenable to complete resolution on a paper record." *Moore.*, 409 F.3d at 512 (citing *Charette v. Town of Oyster Bay*, 159 F.3d 749, 755 (2d Cir. 1998)).

## ARGUMENT

### I. TSS is Unlikely to Succeed on the Merits.

None of TSS's causes of action, as pled in its original complaint, states a cause of action, let alone makes out a case for a likelihood of success on the merits.[2] TSS did not separately plead a cause of action for permanent injunction but instead seeks injunctive relief based on the torts alleged in its complaint. Those causes of action do not provide a basis for injunctive relief, particularly because the underlying claims lack merit.

#### A. There is No Proof BNA Tortiously Interfered with Any Contracts.

BNA cannot be held liable for tortious interference, and thus TSS is not entitled to a preliminary injunction. TSS alleges BNA's tortious interference with contracts between itself and its customers, but it did not provide the Court or BNA with copies of any of those contracts, provide any details demonstrating how they were susceptible to breach and, in the original complaint, did not allege any actual breach of those contracts. (*See generally* Complaint.)

To prevail on a claim for tortious interference, TSS is required to prove "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom." *Davis v. Odn I GmbH*, No. 25-860, 2025 U.S. App. LEXIS 30497 at *6 (2d Cir. Nov. 21, 2025) (further citation omitted). Aside from a boilerplate

---

[2] The instant motion makes reference to the original complaint and Affirmation of Cassie Brown. TSS recently amended its complaint but opted not to refile its motion so as to incorporate the allegations therein. The Amended Complaint does not itself constitute evidence in support of the instant motion. Accordingly, the Court should disregard the Amended Complaint as an affidavit in support of the instant motion. However, even if the Court considers the Amended Complaint, TSS still does not satisfy its burden of proof required to obtain a preliminary injunction.

statement unsupported by actual factual allegations that "BNA intentionally and improperly procured . . . the breach of these contracts without justification," TSS did not allege an actual breach of any contract with a customer in support of its motion. (Verified Complaint at ¶ 61.) That formulaic recitation of the elements is insufficient to state a cause of action, let alone prevail on a motion for preliminary injunction. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Absent an allegation that a customer breached a contract with TSS, it could not make out, let alone prove, its tortious interference claim. *See 106 N. Broadway, LLC v. Lawrence*, 189 A.D.3d 733, 740 (2d Dep't 2020) (affirming dismissal of a tortious interference claim for absence of breach of contract).

Instead of proving these elements, including that any contract was actually breached, TSS relies exclusively on its claim that a breach will occur. "The New York Court of Appeals has 'repeatedly linked availability of the [preliminary injunction] remedy' of a claim for tortious interference 'with a breach of contract.'" *First-Citizens Bank & Tr. Co. v. Patriot Bank, N.A.*, 834 F. Supp. 3d 462, 473 (S.D.N.Y. June 9, 2026) (quoting *NBT Bancorp v. Fleet/Norstar Fin. Grp.*, 87 N.Y.2d 614, 620-21 (1996)); *see also Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413, 424-25 (1996). The instant motion, which relies on the original complaint and supporting affidavits, but pre-dates and does not cite to the Amended Complaint, does not allege any actual breach of contract by a TSS customer.

Assuming, arguendo, that the Court were willing to consider the later-filed Amended Complaint, it still lacks sufficient allegations to support tortious interference with contract. Like in *First-Citizen Bank & Tr. Co.*, TSS did not identify any specific provision

of the contract supposedly breached. *First-Citizens Bank & Tr. Co.*, 834 F. Supp. 3d at 473. TSS was required to identify the terms of the breached contract and provide evidence that its customer did not have the right, based on TSS's performance, to terminate that contract. *See Muddy Bites, Inc. v. Evergreen USA, LLC*, 24-cv-07089 (LAK), 2025 U.S. Dist. LEXIS 182866 (S.D.N.Y. Sept. 17, 2025) (requiring allegations of specific contract terms). No such proof was offered here. The allegations TSS presents to the Court disprove tortious interference.

The contemporaneous customer communications disprove TSS's theory of inducement. In its May 6 communications to NYCT, LIRR and Metro-North, BNA expressly preserved existing TSS business while advising that new inquiries and future business should be directed to BNA. BNA likewise told customers on July 10, 2026 that "existing orders that you have placed with our previous distributor, Transit Sourcing Services, Inc., will continue to be processed without any changes." (Dkt. No. 13-9.) These communications are inconsistent with an intent to induce customers to terminate or breach existing contracts with TSS. The preservation of existing business did not, however, mean that every future release under a TSS framework or customer contract constituted an existing purchase order or supply commitment binding upon Bonatrans. Bonatrans' position remains that supply obligations arose only in respect of purchase orders accepted by Bonatrans in accordance with the GPA. Damages, even a risk of future damages, could not plausibly flow from that communication.

TSS must also prove that it has performed, or at least can perform, under the contracts that it complains BNA induced breach. *Vinci Brands LLC v. Coach Servs., Inc.*, 23 Civ. 5138 (LGS), 2023 U.S. Dist. LEXIS 162390 at *35 (S.D.N.Y. Sept. 12, 2023).

Doing so would require it to offer proof that Bonatrans, its supplier, was obligated to provide it with product and was not in breach of the GPAs. TSS actually alleges the opposite, that Bonatrans refuses to provide it with product under the GPAs that Bonatrans deems terminated. (Amended Complaint at ¶¶ 42 and 95.) That allegation defeats any claim that BNA is tortiously interfering and requires TSS to pursue arbitration claims against Bonatrans instead.

**B. BNA Did Not Tortiously Interfere with Business Relations.**

Absent from any version of the complaint is an allegation that BNA used illegal means to interfere with business relations. The elements of a cause of action for tortious interference with business relations include: "(1) a business relationship between plaintiff and third party, (2) defendant's knowledge of that relationship; (3) defendant's intentional interference with that relationship; (4) defendant's actions were motivated by malice or otherwise constituted illegal means; and (5) damages. *Harrington v. Ortolani*, 247 A.D.3d 733, 736 (2d Dep't Mar. 4, 2026). While tortious interference with business relations is similar to tortious interference with contract, the former requires proof of more culpable conduct. *NBT Bancorp.*, 87 N.Y.2d at 621; *106 N. Broadway, LLC*, 189 A.D.3d at 740. Failing to establish a claim for tortious interference with contract precludes recovery for tortious interference with business relations. *Pride Techs., LLC v. Khublall*, 21-2225, 2022 U.S. App. LEXIS 34204 at fn. 2 (2d Cir. Dec. 13, 2022). "Conduct motivated by self-interest or other economic considerations cannot be characterized as undertaken solely to harm the plaintiffs." *Barbato v. Interstate Fire & Cas. Ins. Co.*, 25-cv-5312 (JGK), 2025 U.S. Dist. LEXIS 259094 at *13 (S.D.N.Y. Dec. 15, 2025) (citing *KAM Constr. Corp. v.*

*Bergey*, 151 A.D.3d 1706 (4th Dep't 2017)). TSS opts not to allege that BNA acted with malice, choosing instead to focus on the use of "illegal means."

The term "illegal" or "wrongful" means is confined to the use of "physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure." *106 N. Broadway, LLC*, 189 A.D.3d at 740. Defendant's efforts at persuasion alone are insufficient. *Id*. Instead, the general rule is that the defendant's conduct must amount to a crime or independent tort. *Id*. at 741.

According to the original complaint, the supposed wrongful means employed here were statements to TSS's customers that BNA was Bonatrans' exclusive distributor. (Verified Complaint at ¶ 67.) TSS admits that Bonatrans terminated its GPA with TSS. (*Id*. at ¶ 7.) "[D]efendants' exercise of their contractual rights is not, without more, criminal or tortious." *Barbato*, 2025 U.S. Dist. LEXIS 259094 at *13. Bonatrans decision to terminate the GPA, even if attributable to BNA, is not tortious. Statements by BNA about its role as exclusive distributor for Bonatrans are truthful, do not constitute an independent tort such as fraud, and no fraud is alleged here. The Amended Complaint includes allegations likely intended to support TSS's tortious interference with business relations claim by alleging contact between BNA and TSS customers Irwin Car and Equipment, WMATA and MTA, none of whom are alleged to have yet terminated any contract with TSS. (Amended Complaint at ¶¶ 97-111.) All that is alleged with respect to Irwin Car and Equipment is a single instance of contact from BNA's CEO. (*Id*. at ¶¶ 97-101.) Indeed, when Irwin/GMI advised BNA that it could not issue a new RFQ because of its existing contractual relationship with TSS, BNA expressly respected that position, explaining that

it did not wish to place pressure on Irwin or interfere with its contractual relationship with TSS. (Weimann Dec. at ¶ 4.)

TSS alleges, only upon information and belief, that BNA contacted WMATA and that non-party Bonatrans had not confirmed that it would supply the additional quantity now at issue. (Amended Complaint at at ¶¶ 102-105.) Bonatrans had confirmed a specified quantity of wheels to TSS, whereas the additional release relied upon by TSS was not part of that confirmed quantity. (Weimann Dec. at ¶ 6.) Moreover, the contemporaneous communications reflect that the purpose of BNA's discussions with WMATA was to ensure continuity of supply and to address BNA's qualification as a supplier, not to induce WMATA to breach an existing contract with TSS. (*Id*. at Ex. C.)

Again, with respect to MTA, all that TSS alleges is that "[o]n information and belief, Defendants sent multiple letters to MTA agencies beginning in May 2026" and that such letters "resulted in confusion and multiple calls from MTA procurement employees." (*Id*. at ¶¶ 106-111.) There is no evidence that BNA employed wrongful means with respect to its contact with any of those customers. TSS could not even plead with certainty that contact occurred. The plaintiff has failed to set forth evidence supporting its tortious interference with business relations claim such that it has demonstrated a likelihood of success on the merits.

**C. BNA Did Not Engage in Unfair Competition.**

"The essence of an unfair competition claim under New York law is that the defendant misappropriated the fruit of plaintiff's labors and expenditures by obtaining access to plaintiff's business idea either through fraud or deception, or an abuse of a

fiduciary or confidential relationship." *MLGenius Holdings LLC v. Google LLC*, 20-3113, 2022 U.S. App. LEXIS 6206 (2d Cir. Mar. 10, 2022).

The Verified Complaint neither alleges the existence of a "business idea" nor the use of fraud or deception by BNA to obtain that idea. At best, the Verified Complaint takes issue with the fact that TSS built its entire business around the sale of Bonatrans products, which is confirmed by its website which offers no other products for sale (http://www.tssrail.com/), and the fact that Bonatrans terminated its GPA effective July 7, 2026 instead of waiting for it to expire on December 31, 2026. (Verified Complaint at ¶¶ 41.) Bonatrans is not a party to this litigation, and any dispute over the termination of either GPA, or TSS's continuing rights thereunder, is the subject of arbitration in Austria. (*Id*. at Ex. 1, § 14.3; Ex. 3, § 15.3.)

The Amended Complaint fails to allege the use of wrongfully obtained business ideas to solicit Amsted Rail, Irwin Car and Equipment, WMATA or MTA. (Amended Complaint at ¶¶ 90-111.) The primary allegation is simply that BNA told TSS customers that TSS was no longer the exclusive distributor of Bonatrans products. Where a party lawfully terminates an agreement to provide goods and notifies end users of other sources of those goods, it has not engaged in unfair competition. *SymQuest Grp., Inc. v. Canon U.S.A., Inc.*, 15-cv-4200(LDW)(SIL), 2015 U.S. Dist. LEXIS 114898 at *37-*38 (S.D.N.Y. Aug. 7, 2015).

TSS claims that BNA threatened not to approve Amsted Rail's purchase of 624 wheels through TSS, but it did not allege, let alone prove, that BNA used a business idea illicitly obtained from TSS to do so. Instead, TSS claims BNA used its knowledge of Amsted Rail's purchase order to conduct negotiations. (Amended Complaint at ¶ 91.) To

the extent TSS expected Bonatrans to provide wheels pursuant to a purchase order from Amsted Rail, its regular and contractually required process required it to share that purchase order with Bonatrans for confirmation. (Amended Complaint at ¶ 42.) There is no allegation that BNA used a "business idea" to engage in unfair competition with TSS regarding Amsted Rail.

The contemporaneous communications concerning Amsted Rail further undermine TSS's characterization of BNA's conduct. (Weimann Dec. at Ex. D.) The requirement at issue concerned deliveries beginning in January 2027, after the expiration of TSS's exclusivity on December 31, 2026 even under TSS's own interpretation of the GPA. At the time of the communications, Bonatrans had not received a corresponding purchase order from TSS. (*Id*. at ¶ 7.) BNA's request that Amsted provide its purchase order promptly was made in order to secure the necessary production capacity and transportation for the requested January delivery. (*Id*. at ¶ 9.) Nothing in those communications demonstrates an effort to induce Amsted to breach an existing contract with TSS.

As set forth in greater detail above, TSS's allegations of contact with other customers, including Irwin Car and Equipment, WMATA and MTA, alleged upon information and belief, fail to accuse, let alone prove, that BNA used an ill-gotten business idea in connection with such contact. (Amended Complaint at ¶¶ 97-111.) There are no allegations in the Amended Complaint that BNA used specific "business ideas" to make pitches to these customers.

There is no evidence of a confidential or fiduciary relationship between BNA and TSS. TSS's principal, Jeffrey Scofield, retired as CEO of the company, putting the

relationship between Bonatrans and TSS in jeopardy. (Verified Complaint at ¶ 29.) TSS knew, as long ago as the first quarter of 2024, that Bonatrans wanted to become more involved in distribution of its own products in the U.S. (*Id*. at ¶ 24; Amended Complaint ¶ 46.) The Verified Complaint does not set forth the date or dates on which confidential information was allegedly shared with BNA, but it was certainly after 2024. (*Id*. at ¶¶ 26-27.) TSS admits that it knew on January 5, 2026 that BNA wanted to be introduced to TSS customers (who were also Bonatrans customers). (*Id*. at ¶ 29.) TSS was aware no later than January 30, 2026 that Bonatrans intended to include BNA in the sales process regardless of TSS's exclusive rights. (*Id*. at ¶ 30.) TSS knew by February 17, 2026 that there would be no acquisition. (*Id*. at ¶ 35.) The following week TSS voluntarily took BNA on a roadshow to meet with its customers. (Amended Complaint at ¶ 62.) TSS further knew that its contract with Bonatrans would not continue beyond December 31, 2026, and that providing information that it believed to be proprietary could be to its detriment when Bonatrans was considering whether or not to allow TSS to remain its exclusive distributor. (Verified Complaint at ¶ 41.) BNA was clearly a potential competitor. Nonetheless, TSS shared what it now claims is protected information with BNA freely without requiring entry into a confidentiality agreement, nonsolicitation agreement or noncompetition agreement. (*See generally id*.) It made introductions to customers even after it knew there would be no acquisition. (Amended Complaint at ¶¶ 62 and 71.) TSS has not established the existence of any agreement, promise, course of dealing or other circumstances imposing a confidentiality duty on BNA. In fact, TSS's own conduct, sharing information with a party that it knew would not acquire it, is inconsistent with its claims of secrecy.

The original complaint does not allege any TSS customer actually terminated a contract with TSS. The only TSS customer alleged to have terminated a contract in the Amended Complaint is Amsted Rail. What is missing from the Amended Complaint are details sufficient to determine if Amsted Rail was entitled to terminate based on TSS's performance or lack thereof. The Amended Complaint further fails to connect BNA's acquisition of some ill-gotten business idea to Amsted Rail's decision to buy from BNA. Amsted Rail apparently claimed that non-party Bonatrans' delay confirming a TSS purchase order caused it to purchase directly from BNA.[3] (Amended Complaint at ¶ 95.)

**D. TSS Cannot Establish the Existence of Trade Secrets, Let Alone their Misappropriation.**

TSS has not established that BNA was subject to any agreement, confidential relationship or duty to protect trade secrets, and the things identified as trade secrets in the Verified Complaint are not. Moreover, TSS has not adequately alleged BNA's use of the supposed trade secrets. The elements of a trade secret misappropriation claim are: "(1) possession of a trade secret; and (2) use of that trade secret by the defendant 'in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means.'" *Tri-Star Light Corp. v. Goldstein*, 151 A.D.3d 1102, 1106 (2d Dep't 2017). Courts have found that New York's common law misappropriation claim relies on fundamentally the same elements as a federal Defend Trade Secrets Act claim. *Sadkhin Franchising Co. LLC v. Zamora*, 25-cv-1657 (NRM) (CHK), 2026 U.S. Dist. LEXIS 94461

[3] Bonatrans was not obligated to provide any product to TSS until it accepted a TSS's purchase order, so Bonatrans delay or refusal to provide confirmation is neither wrongful nor a breach of the GPA. (Dkt. No. 13-2 at § 5.3.) Moreover, Bonatrans obligation to provide product to TSS applies only to purchase orders submitted by TSS and accepted by Bonatrans prior to the July 7, 2026 termination of the GPA, subject to payment for the product. (*Id*. at § 12.7.) To the extent TSS disagrees, it must look to arbitration with Bonatrans to resolve those questions. (*Id*. at § 14.3.)

at *7 (E.D.N.Y. Apr. 29, 2026). Much of the information that TSS now characterizes as confidential or proprietary was information that TSS was contractually required to provide to Bonatrans in the ordinary course of the parties' distribution relationship. Under the GPA, TSS was required to provide Bonatrans with information concerning purchase orders, pricing and margins, market developments, competitors, potential customers, tenders and anticipated customer requirements. Bonatrans, as the manufacturer whose products TSS distributed, was contractually entitled to receive that information as part of the distribution arrangement for which TSS received its agreed remuneration. (Dkt. No. 13-2at §§ 3.2, 5.2, 6.2, 7.4.2 and 7.4.3.) TSS therefore cannot establish that such information came into BNA's or Bonatrans' possession solely through the contemplated acquisition of TSS. Nor has TSS established that Bonatrans or BNA agreed to any separate confidentiality restriction governing information that Bonatrans was already contractually entitled to receive under the GPA.

**1. The Alleged Trade Secrets are Not Secrets.**

TSS alleges that broad categories of information are trade secrets without sufficiently identifying what particular information within those broad categories should actually receive trade secret protection. (Verified Complaint at ¶ 21.) More specificity is required. *See Universal Processing LLC v. Zhuang*, No. 17 CV 10210-LTS, 2018 U.S. Dist. LEXIS 168730 at *7-*8 (S.D.N.Y. Sept. 28, 2018) (requiring complaints to include facts sufficient to identify the information for which protection is claimed and sufficient information about its nature, value and measures taken to safeguard it that support an inference that the information qualifies as a trade secret).

Trade secrets are "any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Ashland Mgmt. Inc. v. Janien*, 82 N.Y.2d 395, 407 (1993). When considering whether something is a trade secret, New York courts consider the following factors:

> (1) the extent to which the information is known outside of [the] business;
> (2) the extent to which it is known by employees and others involved in [the] business;
> (3) the extent of measures taken by [the business] to guard the secrecy of the information;
> (4) the value of the information to [the business] and [its] competitors;
> (5) the amount of effort or money expended by [the business] in developing the information;
> (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. . . .

*Id*. (reformatted). None of the information alleged to be a trade secret in the Verified Complaint actually is one. TSS's customer list is not a trade secret because that list is published on its website. (http://www.tssrail.com/Clients.html) Pricing and margin information was shared with Bonatrans pursuant to the GPA, and the GPA does not contain confidentiality provisions in favor of TSS. (Verified Complaint at ¶ 21.) TSS was contractually obligated to share market information and projections of customers' needs with Bonatrans. (*Compare* Amended Complaint at ¶ 57 *with* Dkt. No. 13-2 at §§ 7.4.2 and 7.4.3.) The procedures for moving goods through customs are not secrets but merely require compliance with laws and cannot be trade secrets. Bonatrans was likewise aware of active customer opportunities pending bids, or would become aware of them when they were submitted for bid confirmation, as alleged in the Verified Complaint. (Verified Complaint at ¶ 21.)

**2. TSS Failed to Protect its "Secret" Information.**

TSS did not guard the secrecy of its information from disclosure to or by BNA or its affiliate, Bonatrans. Internal efforts to password protect and limit access to files do not justify trade secret protection, especially when the same information was shared broadly with BNA and Bonatrans. *See Pauwels v. Deloitte LLP*, 83 F.4th 171, 181-83 (2d Cir. 2023) (explaining that by sharing trade secrets with parties not bound to maintain the information as confidential, trade secret status was destroyed); *see also Inv. Sci., LLC v. Oath Holdings Inc.*, 20 Civ. 8159 (GBD), 2021 U.S. Dist. LEXIS 151076 (S.D.N.Y. Aug. 11, 2021) (holding that the use of passwords to protect corporate files generally is not a reasonable measure because it fails to differentiate from a protective measure used to safeguard other corporate information). TSS alleges that it has three employees and that only those employees had password access to files, but it also admits that it shared the "secret" information with BNA even after it knew there would be no merger. (Amended Complaint at ¶¶ 58-59.)

The Verified Complaint does not allege any efforts by TSS to preclude BNA or its affiliates from using or disseminating information. (*See generally* Verified Complaint and Amended Complaint.) TSS did not require BNA to sign any kind of confidentiality agreement before receiving the information, nor did it require the same of Bonatrans under the GPA. (Dkt. No13.2.) The GPA specifically required TSS to share pricing and margin information. (*Id*. at §§ 3.2, 5.2, 6.2, 7.4.2 and 7.4.3.) TSS published its customer list online. (http://www.tssrail.com/Clients.html) To the extent not already known to Bonatrans, certain information concerning TSS's customer arrangements have also been

available from public sources, particularly in case of public transit authorities subject to freedom of information or public record laws. (*Id*.)

**3. BNA Had No Duty to Maintain the Disclosed Information as Confidential.**

TSS does not allege any agreement between TSS and BNA to maintain any information as secret or confidential. (*See generally* Verified Complaint.) Instead, it alleges that information it claims to be trade secrets was transmitted to BNA "in confidence, based on Defendants' representations that BNA would acquire TSS, and based on the expectation that Defendants were only using TSS' trade secrets in order to make an offer to acquire TSS." (Verified Complaint at ¶ 79.) BNA never promised to acquire TSS, and in fact according to the Verified Complaint BNA told TSS it was not going to complete an acquisition on February 17, 2026, a week before it introduced BNA to its customers. (Amended Complaint at ¶¶ 62 and 71.) Moreover, BNA is not alleged to have promised to keep TSS's information secret. Instead, TSS merely alleges that this was its own expectation. (*Id*. at ¶ 59.) In cases where expectations of confidentiality were sufficient to establish trade secret liability, those expectations arose out of affirmative oral promises or written agreements covering the concept of confidentiality generally. *See Zylon Corp. v. Medtronic, Inc.*, Index No. 650523/08, 2015 N.Y. Misc. LEXIS 1276 (Sup. Ct. N.Y. Cnty. Apr. 17, 2015) (relying on deposition testimony and documentary evidence to establish an expectation); *see also Thayil v. Fox Corp.*, Case No. 11 Civ. 4791 (SAS), 2012 U.S. Dist. LEXIS 13669 (S.D.N.Y. Feb. 2, 2012) (dismissing a trade secret misappropriation claim because there was no allegation of a duty of trust or any agreement by the defendant to maintain confidentiality). There are no allegations or oral promises or general confidentiality agreements here. (*See generally* Verified Complaint.)

**4. TSS has Not Presented Evidence of Use of Trade Secrets.**

At best, TSS alleges that BNA contacted customers on a publicly available customer list to discuss the purchase and sale of Bonatrans products. (Verified Complaint at ¶¶ 44-47, 49.) The only information TSS claims BNA used when contacting the customers is "customer contact information" and "historical and current pricing and contract details." (*Id*. at ¶ 51.) As discussed above, TSS publishes its customer list. Determining who within an organization might be interested in purchasing from BNA requires little more than a review of LinkedIn. TSS also made introductions to those customers after it knew the potential acquisition was off. (Amended Complaint at ¶¶ 61-62.) Customer contact information, pricing information and current contracts were also already known to Bonatrans as a result of confirming purchase orders from those customers under the GPA, and thus not learned by BNA as part of acquisition discussions. (Verified Complaint at ¶ 21.)

Even if BNA obtained trade secrets from TSS after promising to maintain confidentiality, TSS does not allege that BNA actually used that information. In its Amended Complaint, TSS identifies four customers that BNA is alleged to have contacted, although TSS only alleges BNA's contact with two of them "on information and belief." (Amended Complaint at ¶¶ 90-111.) Where contact is alleged, TSS claims that BNA merely shared the fact that TSS was no longer Bonatrans' exclusive distributor with three—hardly a trade secret—and used purchase orders already in its possession pursuant to the GPA when communicating with Amsted Rail. (Amended Complaint at ¶¶ 90-92, 98, 105 and 109.)

## II. There is No Risk of Irreparable Harm.

"A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009). Absent a showing of a likelihood of irreparable harm, a preliminary injunction will not be granted. *CSI Ent., LLC v. Mayweather*, No. 26-CV-5150 (VSB), 2026 U.S. Dist. LEXIS 147670 at *9 (S.D.N.Y. July 2, 2026); *see also Smith v. City of N.Y.,* 754 F. Supp. 3d 581, 583 (S.D.N.Y. 2024). Movants must demonstrate they will suffer injuries that are neither remote nor speculative, but actual and imminent, and that those injuries cannot be remedied monetarily or through permanent injunction at the end of trial. *Mayweather*, 2026 U.S. Dist. LEXIS 147670 at *9.

### A. TSS's Delay Undercuts the Need for Preliminary Injunctive Relief.

TSS alleges attempted interference with contracts and misuse of purported trade secrets dating back to February 23, 2026 when roadshows began (Amended Complaint at ¶ 62), May 6, 2026 when BNA sent a communication to TSS's customers claiming it would be assuming the role of exclusive distributor (Amended Complaint at ¶ 75) and May 11, 2026 when "the other shoe dropped" and "Bonatrans sent a letter to TSS providing notice of non-renewal of the GPA, also claiming 'repeated breaches of the Agreement [by TSS]" (Amended Complaint at ¶ 80) and certainly on July 10, 2026 when BNA sent a letter to TSS customers informing them that Bonatrans relationship with TSS was terminated except for with respect to pending purchase orders. (Amended Complaint at ¶ 87.) TSS waited months from its initial allegations of interference to commence litigation, failed to seek a temporary restraining order in this case and acquiesced to an

argument date on its motion of October 16, more than a week after the conference at which it sought to preclude BNA's participation.

"[M]onths-long delays in seeking preliminary injunctions have repeatedly been held by courts in the Second Circuit to undercut the sense of urgency accompanying a motion for preliminary relief." *Rosenberg v. Avery*, 25-cv-222 (ALC), 2025 U.S. Dist. LEXIS 200543 at *49-*50 (S.D.N.Y. Oct. 9, 2025) (quoting *Council for Responsible Nutrition v. James*, No. 24-cv-1881 (ALC), 2024 U.S. Dist. LEXIS 72982 (S.D.N.Y. Apr. 19, 2024)). "[D]elays undermine the theory justifying preliminary injunctions, namely 'that there is an urgent need for speedy action to protect the plaintiff's rights.'" *Council for Responsible Nutrition*, 2024 U.S. Dist. LEXIS 72982 at *31 (quoting *Central Point Software, Inc. v. Glob. Software & Accessories, Inc.*, 859 F. Supp. 640, 644-45 (E.D.N.Y. 1994)). TSS has not acted with any urgency in this case.

TSS first asserted its claims via letter dated August 7, 2026. (Declaration of Curtis A. Johnson in Opposition to Motion for Preliminary Injunction ("Johnson Dec.") at Ex. A.) It filed a complaint in state court, albeit in the wrong county, on August 20, 2026. (*See generally* Verified Complaint.) The State court declined to grant a TRO, and TSS failed to move for a temporary restraining order once this case was removed on September 9, 2026. At a conference on September 24, 2026, TSS agreed to an argument date on the instant motion on October 16, 2026 (Johnson Dec. at ¶ 3), fully understanding that the trade show it did not want BNA to attend was on October 4-7, 2026. (Amended Complaint at ¶¶ 118-120.) There is no urgency here, much of the relief sought has been mooted by the passage of time and the Court should deny the instant motion accordingly.

**B. There is No Risk of Loss of Business Relationships.**

"The Second Circuit has held that irreparable harm can take the form of 'the loss of a relationship with a client that would produce an indeterminate amount of business in years to come.'" *First-Citizens Bank & Tr. Co.*, 834 F. Supp. 3d at 471 (quoting *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999)). The loss of access to a product may serve as irreparable harm, but only where the injunction could preserve access to that product long term. *First-Citizens Bank and Tr. Co.*, 834 F. Supp. 3d at 471. The viability of the business beyond the sale of a specific product must be at stake. *Id*. at 472. "The loss of a product or service that is neither unique nor irreplaceable does not constitute irreparable harm." *SymQuest Grp., Inc.* 2015 U.S. Dist. LEXIS 114898 at *17; *see also Smith v. Fedrico*, No. 12-cv-4408, 2013 U.S. Dist. LEXIS 3681 (E.D.N.Y. Jan. 8, 2013) (denying preliminary injunction where there was "no evidence that [the products] at issue are in anyway unique or irreplaceable").

TSS itself argues that its business plan after December 31, 2026 is to begin selling Bonatrans' competitors train wheels. (Amended Complaint at ¶ 117.) As speculative as that plan may be, it undercuts any claim of irreparable harm from the loss of its relationship as Bonatrans exclusive distributor. At present, TSS's entire business is dependent on its role as Bonatrans exclusive distributor in North America. (Id. at ¶ 4; Dkt. No. 13-2 at § 9.2.) TSS admits that that role will not continue past December 31, 2026 (*id*. at ¶ 43), and BNA contends that the GPA giving rise to that role was already validly terminated. (*Id*. at ¶ 37.) There is no indefinite-duration business relationship between TSS and its customers with respect to the Bonatrans products it seeks to preclude BNA from marketing that could be preserved with a temporary restraining order. To the extent

TSS has established its own goodwill with customers, and is able to secure an exclusive distribution role with one of Bonatrans' competitors, that goodwill will not be harmed because TSS will be able to exploit that goodwill in service of a new manufacturer.

### C. TSS Can Recover Monetarily.

The availability of a monetary remedy precludes preliminary injunctive relief, and TSS can recover monetarily if its theories are correct. Tortious interference with contract is inherently compensable with a monetary award. *See Winter Bros. Recycling Corp. v. Jet Sanitation Serv. Corp.*, 23 Misc. 3d 1115(A) (Sup. Ct. Nassau Cnty. 2009). TSS can easily calculate its expected profits from any contract it loses and pursue a claim for damages in that amount.

## III. Hardships Do Not Balance in Favor of TSS.

TSS put itself entirely at the mercy of Bonatrans for its survival, but that business decision does not require Bonatrans to ensure TSS's viability. TSS only has three employees, the principal of whom Jeffrey Scofield, announced his retirement and stepped down as CEO. (Verified Complaint at ¶ 29.) Mr. Scofield hoped to pass the business on to his daughter, Cassie Brown, but there was no guaranty of this. (Brown Aff. at ¶ 41.) Bonatrans was free to terminate its exclusivity with TSS and TSS does not take issue with Bonatrans exercise of that option. (Amended Complaint at ¶ 36; Dkt. No. 13-2 at § 12.2.) TSS has no right to future income and no business to protect without Bonatrans, who it failed to sue in this case and has declined to pursue via arbitration. TSS failed to protect its trade secrets, such as they are, and failed to keep itself vital to Bonatrans' North American operations. Bonatrans and BNA were within their rights and while acting to protect their self-interest did not violate business norms or the law.

The relief TSS seeks in the instant motion will not help it in the short or long term. The order to show cause seeks only to preliminarily enjoin BNA from contacting, soliciting or communicating with an unspecified list of prospective customers through December 31, 2026, enjoining BNA from inducing breaches of contracts with TSS, requiring the return of confidential information and precluding further use of the same, precluding BNA from identifying itself as Bonatrans' exclusive distributor through December 31, 2026 and precluding BNA from supplying Bonatrans products to TSS's territory through the end of the year. Most of the relief sought requires resolution of the question of whether Bonatrans breached the GPA with TSS, which is a question subject to arbitration and not one the Court should broach considering Bonatrans is not even a party to the instant litigation. None of the requested relief would prevent Bonatrans from conducting its own marketing or sales in North America or engaging in exactly the same activities TSS seeks to prevent BNA from undertaking. The requested injunction cannot be obtained because Bonatrans is not a party.

**IV. The Relief Sought is Vague and Ill-Defined.**

The relief TSS seeks, particularly its proposed prohibitions regarding "any customer or prospective customer of TSS," is too vague, ambiguous and broad to be enforced. Assuming, *arguendo*, that TSS was entitled to injunctive relief, the specific relief requested in its order to show cause cannot be granted. Fed. R. Civ. P. 65(d) requires that "[e]very order granting an injunction and every restraining order must . . . state its terms specifically[] and . . . describe in reasonable detail . . . the act or acts restrained or required." Requests for relief must "be specific and definite enough to apprise those within its scope of the conduct that is being proscribed." *City of New York v. Mickalis*

*Pawn Shop, LLC*, 645 F.3d 114, 143 (2d Cir. 2011). "The specificity provisions of Rule 65(d) are no mere technical requirements[ but are] designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Beckman v. Artspace Projects, Inc.*, 26-CV-921-LJV, 2026 U.S. Dist. LEXIS 167693 (W.D.N.Y. July 28, 2026) (quoting *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974)). The failure to propose enforceable and specific relief is grounds for denial of a motion for preliminary injunction. *See Samsung Elecs. Am., Inc. v. Vintage Tech LLC*, 20-cv-10771 (AJN), 2021 U.S. Dist. LEXIS 49801 at *18 (S.D.N.Y. Mar. 11, 2021); *see also Allison Lending, LLC v. Landa APP 3 LLC*, 25-cv-01939(EK)(MMJ), 2025 U.S. Dist. LEXIS 224917 at *5 (E.D.N.Y. Nov. 16, 2025).

TSS seeks to "[p]reliminarily and permanently enjoin BNA from directly or indirectly contacting, soliciting, or communicating with any customer or prospective customer of TSS." (Dkt. No. 1-2 at State Ct. Dkt. 24.) TSS has not defined for the Court who are its customers or prospective customers or what constitutes indirect contact, solicitation or communication. Bonatrans is not a party, and is not expressly identified in the proposed injunction, leaving unclear whether and to what extent TSS would contend that conduct by Bonatrans falls within the prohibition on "direct or indirect" contact..

The same "directly or indirectly" language appears in TSS's request that the Court "enjoin BNA from directly or indirectly inducing or encouraging any customer of TSS to breach, terminate, or fail to perform an existing contract or purchase order with TSS." (Dkt. No. 1-2 at State Ct. Dkt. 24.) TSS is likely to view Bonatrans refusal to accept and honor new TSS purchase orders for product as BNA's indirect inducement of customer

breach even though Bonatrans is not a party and cannot be compelled to do business with TSS.

TSS likewise seeks to "[p]reliminarily and permanently enjoin BNA from any further use of TSS's confidential trade secrets." (Dkt. No. 1-2 at State Ct. Dkt. 24.) However, TSS does not adequately define those trade secrets or what would constitute their use. Presumably, TSS would seek to prevent BNA from ever communicating with the relevant contact persons at each of its customers or prospective customers because it claims the identities of those contacts to be trade secrets, but this is entirely too broad and not enforceable.

BNA could not comply with TSS's demand that it "return [] TSS's confidential and proprietary trade secret information" if it wanted to. (Dkt. No. 1-2 at State Ct. Dkt. 24.) BNA has no way of distinguishing between information it learned in the ordinary course of its business or from Bonatrans from things that may have been voluntarily shared with it by TSS.

The many infirmities found in TSS's broad and ill-defined requests for injunctive relief, not to mention its request for a permanent injunction at this stage, preclude it obtaining any relief and require denial of its motion.

## CONCLUSION

For the reasons stated herein, and those set forth in BNA's Motion to Compel Arbitration, Change Venue and Dismiss, as well as the supporting declarations, the Court should deny TSS's motion for a preliminary injunction and grant BNA such other and further relief as it deems just and proper.

Dated: October 2, 2026

BOND, SCHOENECK & KING, PLLC

By:______________________
Curtis A. Johnson
*Attorneys for Bonatrans North America, Inc. and Jiří Kaleta*
350 Linden Oaks, Third Floor
Rochester, New York 14625-2825
Telephone: (585) 362-4700